UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZACH BATISTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-2308-B |
| | § | |
| HEWITT CAPITAL LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Zach Batiste's Motion for Default Judgment (Doc. 14), filed

January 16, 2019. For the reasons discussed below, the Court **GRANTS** Batiste's Motion.

## I.

## BACKGROUND

This is a Fair Debt Collection Practices Act (FDCPA) suit. On August 30, 2018, Batiste filed

a complaint against Hewitt Capital, LLC, alleging that Hewitt violated the FDCPA on multiple

occasions when Hewitt phoned him in reference to an $800 debt Batiste incurred by failing to repay

an installment loan he received from ACE Cash Express. Doc. 1, Compl., ¶¶ 4, 6, 7, 11, 13, 15–19.

Specifically, Batiste says Hewitt started calling Batiste on July 23, 2018 to collect on behalf of ACE.

*Id.* ¶ 15. Allegedly, during the call Hewitt's representative gave Plaintiff until July 26, 2018, to make

payment before threatening Batiste with suspension of his driver's license. *Id.* ¶ 16. Additionally,

during this initial call, Defendant's representative allegedly informed Batiste that they were on

another line with attorney providing instructions on how to suspended his driver's license. *Id.* ¶ 17.

And allegedly, on July 26, 2018, Hewitt placed no less than seven calls to Batiste in an attempt to

collect on this same debt. *Id.* ¶ 18.

Batiste now sues under the FDCPA, alleging Hewitt and its representatives: (1) caused his phone to ring seven times on July 26, 2018, in violation of 15 U.S.C. § 1692d and d(5); and (2) threatened to suspend his drivers license until the debt was paid, in violation of 15 U.S.C. § 1692e(5). *Id.* ¶¶ 23–23. He alleges that Hewitt's calls have severely disrupted his everyday life and overall well-being. *Id.* ¶ 20. In addition, he alleges that he has suffered a number of harms:

> including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, the increased risk of personal injury resulting from the distraction caused by the phone calls, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge their cellular telephone as a result of increased usage of their telephone services.

*Id.* ¶ 21. He seeks actual damages under 15 U.S.C. § 1692k(a)(1), additional damages up to the statutory cap of $1,000 under 15 U.S.C. § 1692k(a)(2)(A), costs and reasonable attorneys' fees under 15 U.S.C. § 1692k(a)(3), and any other relief the Court deems just. *Id.* at 5.

Batiste served Hewitt a copy of his complaint on September 11, 2018, through Terri Thongsavat, who is alleged to be designated by law to accept service of process for Hewitt. Doc. 8, Return of Summons, 3. To date, Hewitt has neither answered nor otherwise made an appearance in this case. Consequently, Batiste requested the Clerk enter default against Hewitt on January 15, 2019 (Doc. 12), which the Clerk did that same day (Doc. 13). On January 16, 2019, Batiste moved the Court for a default judgment against Hewitt. Doc. 14, Mot. for Default J. Hewitt failed to respond to Batiste's Motion and the time to do so has passed. The Court now considers that Motion.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for the entry of default judgments in federal court. According to the Rule, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b).

That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing so, the Court is to assume that due to its default, defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Ins. Co. of the W. v. H & G Contractors, Inc.*, at *4 (S.D. Tex. Oct. 5, 2011) ("A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages.") (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524-25 (5th Cir. 2002). Normally damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

Applying this three-part analysis, the Court concludes that a default judgment is procedurally warranted and supported by a sufficient factual basis in Batiste's Complaint.

A.      *Whether An Entry of Default Judgment Is Procedurally Warranted*

In this case, after reviewing Batiste's Motion in light of the six *Lindsey* factors, the Court finds that default judgment is procedurally warranted. First, Hewitt has not filed any responsive pleadings.

Consequently there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, Hewitt's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, there is no evidence before the Court to indicate that Hewitt's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fourth, Hewitt has completely failed to respond to Batiste's Complaint for over seven months, mitigating the harshness of a default judgment. *John Perez Graphics & Design, LLC v. Green Tree Inv. Group, Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Hewitt. Thus, Batiste has met the procedural requirements for default judgment.

B.      *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, Hewitt is deemed to have admitted the allegations set forth in Batiste's Complaint. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for Batiste's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

      1.        <u>FDCPA Violations</u>

                  *a.       Causing a telephone to ring repeatedly under 15 U.S.C. § 1692d and d(5).*

Under the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute specifically states that prohibited conduct includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." § 1692d(5).

Here, Batiste alleges that Hewitt called seven times on July 29, 2018, in an attempt to collect on behalf of ACE. Doc. 1, Compl., ¶ 18. This was the day Hewitt had set as Batiste's deadline to pay the debt or risk having his license suspended. *Id.* ¶ 16. Taking Batiste's allegations as true, Hewitt's repeated calls appear designed to abuse or harass Batiste into paying off the debt, in violation of the statute.

                  *b.       Threatening an action which cannot legally be taken under § 1692e(5).*

Batiste also alleges that Hewitt and its representative threatened action they could not legally take, violating subsection 5, which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Here, Batiste alleges that he was told that if he did not pay, Hewitt would have his driver's license suspended. Doc. 1, Compl. ¶ 27. Again, taking Batiste's allegations as true, this is a an action that could not legally be taken, since Hewitt is alleged to be a private corporation, and thus has no power over the state, which regulates such licenses. Therefore Hewitt is also in violation of 15 U.S.C. § 1692e(5).

2.      Attorneys' Fees

Last, Batiste requests attorneys' fees and litigation costs under 15 U.S.C. § 1692k(a)(3). "It is well-established that the FDCPA is a fee-shifting statute and makes the debt collector liable for reasonable attorney's fees upon successful prosecution of a plaintiff's case." *Young v. Asset Acceptance, LLC*, 2011 WL 618274, at *2 (N.D. Tex. Feb. 10, 2011) (citing 15 U.S.C. § 1692k(a)(3)). But if a plaintiff "fail[s] to enforce any liability for actual or additional damages against [a defendant][,]" then he "does not meet the explicit requirement of § 1692k(a)(3)," which requires that he "bring a 'successful action to enforce the foregoing liability,' in order to receive attorney's fees and costs." *Johnson v. Eaton*, 80 F.3d 148, 151 (5th Cir. 1996). A successful action includes one in which only statutory damages are awarded. *In re Eastman*, 419 B.R. 711, 736 (Bankr. W.D. Tex. 2009). Thus the Court's award of attorneys' fees depends on whether damages are appropriate for the substantive claims.

C.      *Damages*

"The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages . . .[;] establish the truth of any allegation by evidence; or investigate any other matter." Fed. R. Civ. P. 55(b)(2). "Where the amount claimed is a liquidated sum or one capable of mathematical calculation," however, a Court may enter judgment without a hearing. *James*, 6 F.3d at 310.

In his Complaint, Batiste asks for (1) actual damages; (2) statutory damages; (3) costs, and (4) reasonable attorneys' fees under 15 U.S.C. § 1692k(a)(3). Doc. 1, Compl., at 5. The Court must now determine whether his Motion, along with the attached affidavit, is sufficient to allow the Court to grant Batiste damages, and, if so, how much.

1.      Actual Damages

In his Complaint, Batiste asks for actual damages, namely those stemming from the harassing phone calls. *Id.* However, Batiste's Motion for Default Judgment requests only statutory damages, cost, and attorneys' fees. Doc. 14, Mot. Default J., 2–3. Thus, the Court declines to consider an award of actual damages.

2.      Statutory Damages

"[A] plaintiff need not establish actual damages to recover [statutory damages] under the FDCPA." *In re Eastman*, 419 B.R. at 733 (citing *Neild v. Wolpoff & Abramson, LLP*, 453 F.Supp. 2d 918, 924 (E.D. Va. 2006); *Prophet v. Joan Myers, Myers & Assocs., P.C.*, 645 F. Supp.2d 614, 617 (S.D. Tex.2008)). In awarding statutory damages, the Court considers the factors laid out in the statute, including "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional . . . ." *Id.* (quoting 15 U.S.C. § 1692k(b)(1)). Here, all three factors mitigate toward the statutory maximum, which would also function to encourage future compliance with the FDCPA. Thus the Court finds that an award of statutory damages in the amount of $1,000 is appropriate.

3.      Costs and Attorneys' Fees

Last, Batiste requests $2,685.00 in attorneys' fees and $473.00 in costs for a total of $3,158. He attaches a supporting affidavit from one of his attorneys, Joseph Davidson, along with his accounting of the tasks related to his suit. Doc. 14-1, Aff. of Costs; Doc. 14-2, Davidson Aff. As the Court finds that statutory damages are appropriate, reasonable attorneys' fees and costs are also recoverable under 15 U.S.C. § 1692k(a). *See Johnson*, 80 F.3d at 151. In total, the firm billed 7.8 hours, 6.1 hours of which were billed by the two named attorneys, at $375/hr and $425/hr. Doc. 14-

1, Aff. of Costs. While the affidavit omits the number of years the attorneys have been practicing—which would be relevant in determining the reasonable hourly fee—the Court finds that the total fee is reasonable for such a case. *See Parks v. Commercial Recovery Sys., Inc.*, 2014 WL 521501, at *1 (N.D. Tex. Feb. 7, 2014) (granting approximately $3,000 in attorneys' fees in a similar FDCPA default-judgment case).

## IV.

## CONCLUSION

In sum, the Court concludes that a default judgment against Hewitt Capital, LLC is warranted in this case. Thus the Court **GRANTS** Batiste's Motion for Default Judgment (Doc. 14) on all claims, and awards Plaintiff Zach Batiste a total amount of $4,158.

A final judgment will follow.


**SO ORDERED.**

**SIGNED: April 23, 2019.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE